**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**DAVID RUSSELL,**

                              **Petitioner,**

       **- v -**　　　　　　　　　　　　　　　　**Civ. No. 9:02-CV-1026**
　　　　　　　　　　　　　　　　　　　　　　　　**(GLS/GHL)**
**THOMAS L. RICKS, Superintendent,**

                              **Respondent.**

**APPEARANCES:**　　　　　　　　　　　　　　**OF COUNSEL:**

DAVID RUSSELL
Petitioner, *Pro Se*
91-A-4511
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. ANDREW M. CUOMO　　　　　　　PATRICK F. MACRAE, ESQ.
Attorney General for the State of New York　Assist. Attorney General
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

**GARY L. SHARPE**
**United States District Judge**

## MEMORANDUM-DECISION and ORDER

    *Pro se* petitioner David Russell pled guilty to the charge of promoting prison contraband in the first degree. *See Trial Tr.* at pp. H-394-95. On August 4, 2000, Russell was sentenced, as a second felony offender, to a

negotiated prison term of two and one-third (2 ⅓) to four and two-third (4 ⅔) years to run consecutively with the prison term Russell was already serving. *See Sentencing Tr.* at p. H-450. Russell presently seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on various grounds, two of which are dispositive of all claims and are the subject of this decision: 1) unlawfully induced guilty plea; and 2) ineffective assistance of stand-by counsel. *See Pet.* ¶*12, Dkt. No. 1*.[1] For the reasons that follow, the Petition is **DENIED**.

## I. BACKGROUND

On January 10, 2000, Russell was charged with promoting prison contraband in the first degree, a Class D felony.[2] *See Arraign. Tr.* at p. H-2. On October 10, 1999, while confined at the Ogdensburg Correctional Facility, Russell possessed a "folded-over can lid [three] inches in diameter." *See Trial Tr.* at p. 14. On January 25, Russell was arraigned and assigned an attorney. *See Arraign. Tr.* at pp. H-2-3.

On February 18 and 21, respectively, Russell informed the trial court that his attorney failed to file motions he desired to be filed. *See Ltrs.* at pp.

---

[1] Although Russell raises several other grounds, including newly discovered evidence, fraudulent conduct by the prosecutor due to perjured testimony; pleading guilty to conduct that was not a crime; and irregularities in the grand jury process (denied an opportunity to appear and no blacks participated in the process), the Court declines to address these, since his waiver is dispositive.

[2] *See* N.Y. PENAL LAW § 205.25(2).

H-27 & 30. He also noted that he had requested that his attorney hire an investigator, but the idea was discouraged. *See id.* He claimed that he was better qualified to represent himself and that he planned to present his own defense. *See id.* Therefore, he requested that he be allowed to proceed *pro se*. *See id.*; *see also Notice* at p. H-25. On February 22, Russell's attorney filed a motion to be discharged. *See Notice* at p. H-32. She stated that Russell wanted to approve every motion, file motions that did not have merit, review immaterial case law, and have her visit the scene. *See id.*

On March 13, a motion hearing was conducted. *See Hr'g Tr.* at pp. H-38-62. Russell stated the he did not have a good relationship with his attorney and that she told him to accept a plea agreement that he opposed. *See id.* at pp. H-45-46. The court inquired into Russell's ability to represent himself and his relationship with his attorney. *See id.* at pp. H-46-54. Russell stated that while he was not dissatisfied with her, he believed he would be more successful representing himself. *See id.* at pp. H-52-54. After warning Russell about the pitfalls of *pro se* litigation, the court reminded Russell that he would not be aided by an attorney through any proceedings. *See id.* at pp. H-55-61. After Russell acknowledged the risks, the court permitted him to proceed *pro se*. *See id.*

On June 12, the court conducted a hearing to discuss several issues, including Russell's motion to dismiss the indictment. *See Omnibus Hr'g Tr.* at pp. H-110-56. During the hearing, Russell, *inter alia*, sought dismissal because the grand jury lacked minority representation. *See id.* at p. H-123. Denying the motion, the court held that Russell failed to present sufficient facts to require a hearing. *See id.* Thereafter, Russell was offered a plea deal. *See id.* at pp. H-133-36. Although informed of the possibility of life in prison, Russell declined the offer, electing to proceed with trial. *See id.* at pp. H-134-41 & 156.

On June 27, Russell's trial commenced. *See Trial Tr.* at pp. H-167 & 170. Even though Russell was proceeding *pro se*, his attorney was present as stand-by counsel. *See id.* at pp. H-251-52. After consulting with counsel, Russell waived his right to a jury trial. *Id.* at pp. H-252-53; *see also Waiver* at p. H-166. The bench trial began the following day. *See Trial Tr.* at pp. H-259-60.

The first witness to testify was Correction Officer Leo Palmer. *See id.* at p. H-265. Palmer testified that he noticed spots of blood on the floor while returning to his desk on October 10. *See id.* at p. H-267. After calling his sergeant, Palmer ordered an inmate count. *See id.* He noticed a blood trail

and found an inmate sitting on his bed with a towel on his head. *See id.* at pp. H-267-68. The inmate's head was cut, and thus, he was escorted out of the area. *See id.* at pp. H-268-69.[3] After examining the other inmates, Palmer noticed Russell had a paper towel wrapped around one finger. *See id.* Palmer testified that Russell was escorted away from the area after stating he cut his finger on a can top. *See id.* at p. H-269.

Thereafter, Sergeant Bryan Smithers testified. *See id.* at pp. H-295-96. Smithers testified that after Palmer had called him to the cell block, they began to look for any leads that would point to who may have hurt the injured inmate. *See id.* at p. H-298. When Smithers noticed the paper towel on Russell's finger, he became a suspect. *See id.* at p. H-299 & 322. Under cross-examination, Smithers noted that there was no reason for inmates to have can tops; but on re-direct, he indicated that some inmates had been found with can tops. *See id.* at pp. H-324-25.

Next, Correction Officer Matthew Tolman testified. *See id.* at p. H-327. Tolman testified that Sergeant Smithers directed him to remove Russell from the housing unit. *See id.* at p. H-329. Tolman testified that upon informing Russell that he would do a pat frisk, Russell took a can lid out of his pants

---

[3]Under cross-examination, Palmer stated that the inmate claimed to have cut his head from slipping and falling. *See Trial Tr.* at p. H-286.

pocket. *See id.* at p. H-330. Tolman noted that inmates are not allowed to have can tops. *See id.* at p. H-333. Tolman then stated that Russell's can lid had been folded over and the edges were sharp. *See id.* During cross-examination, Tolman conceded that he had told the grand jury that on occasion inmates prepared food with can lids when they did not have access to anything sharp. *See id.* at pp. H-337-38. Tolman further admitted that there was no written procedure allowing inmates to have can tops. *See id.* at p. H-338.

The prosecution rested after Tolman concluded. *See id.* at pp. H-345-46. After Russell's motion to dismiss the case was denied, he called Correction Captain Sara Kurz to testify. *See id.* at p. H-346. Kurz also testified that there was no written policy stating that inmates could use can tops to prepare food but they were used in the cooking area. *See id.* at p. H-347. She noted that, from what she had seen, can tops used to handle food are usually folded. *See id.* Moreover, she testified that to the best of her knowledge, she did not believe inmates using can tops in the kitchen were given misbehavior reports. *See id.* at p. H-348.

Next, inmates Rajer Chavez and Bruce Parker testified that on October 10 they saw Russell cooking. *See id.* at pp. H-356-59 & 362. They stated,

however, that they had no knowledge of whether inmates were permitted to use can tops. *See id.* at p. H-359 & 361-62. Subsequently, Sergeant Curtis LaRue testified that he did not know of any policy regarding can tops. *See id.* at p. H-369. LaRue noted, however, that inmates were aware that can tops can be considered dangerous contraband. *See id.* at p. H-371.

The next day, prior to trial, Russell and the court discussed the charge. *See id.* at pp. H-386-91. The court informed Russell that if he chose to take a plea, he would not be sentenced as a persistent offender. *See id.* at p. H-391.[4] The court also stated that if there was a plea, Russell would have to waive his right to appeal.[5] *See id.* at pp. H-392-93. Russell contemplated the offer and accepted the plea. *See id.* at pp. H-394-95. Before permitting the plea, the court asked Russell, *inter alia*, if he: 1) was threatened or made any promises; 2) understood that he was giving up his right to a trial and all rights associated with going to trial; 3) thoroughly considered taking the plea; 4) discussed the plea with stand-by counsel; and 5) was intoxicated or took any drugs. *See id.* at pp. H-395-96. The court discussed the events of October 10 and Russell admitted he possessed the can top in an area contrary to the

---

[4]The court stated that the discussion occurred only to give Russell his options since he was *pro se*. *See Trial Tr.* at p. H-392.

[5]The court indicated that the plea could be challenged in spite of the waiver under special circumstances. *See Trial Tr.* at pp. H-392-93.

rules of the facility. *See id.* at p. H-397.

After the plea was entered, Russell immediately filed a motion to vacate his plea. *See Notice* at p. H-400-02. He stated that the plea should be vacated because he feared a harsher sentence upon conviction and was mislead into pleading guilty based on the persistent felony rule. *See id.* On August 4, the court conducted a hearing. *See Sentencing Tr.* at pp. H-435-37. The court stated that it fully advised Russell of the possible sentence if convicted at trial and that if he pled guilty, the persistent felony rule would not be applied in calculating his sentence. *See id.* The court denied the motion and sentenced Russell to a term of imprisonment of two and one-third (2 ⅓) to four and two-third (4 ⅔) years to run consecutively to any sentence Russell was already serving. *See id.* at pp. H-437 & 450.

Judgment was entered by the St. Lawrence County Court and was affirmed on appeal to the New York Supreme Court, Appellate Division, Third Department on September 27, 2001. *See People v. Russell*, 730 N.Y.S.2d 574 (N.Y. App. Div. 2001). Leave to appeal to the Court of Appeals was denied on March 29, 2002. *See People v. Russell,* 769 N.E.2d 367 (2002). Russell then filed a N.Y. CRIM. PROC. LAW § 440.10 motion, which was denied on January 3, 2002. *See Order* at pp. H-923-27. On January 28, he moved

for reconsideration, which was denied on February 21. *See Mot. for Recons.* at pp. H-1004-06; *see Order* at p. H-1022. This Petition followed.

## II. DISCUSSION

### A. Standard of Review

According to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner unless the state courts adjudicated the merits of his claims and such adjudication either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001); *see also Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003).

The AEDPA also requires that in any such proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct [and] the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)).

### B. Voluntariness of the Plea

Russell asserts that his guilty plea was unlawfully induced. *See Pet.* at ¶12(f). The Appellate Division stated that the trial court conducted a thorough inquiry, Russell was not confused or influenced by emotional distress, and the record establishes that the plea was entered into voluntarily, intelligently, and knowingly. *See Russell*, 730 N.Y.S.2d at 575.

"A plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent[.]" *Conyers v. McLaughlin*, 96-CV-1743, 2000 WL 33767755, at *4 (N.D.N.Y. Jan. 27, 2000) (quoting *Bousley v. U.S.*, 523 U.S. 614, 618 (1998) (citation and internal quotation marks omitted)). Thus, collateral review of a *habeas* petition is limited to whether a plea was voluntarily, intelligently, and knowingly made. *See id.* (citing *U.S. v. Broce*, 488 U.S. 563, 569 (1989) (citations omitted)). If a defendant signs a waiver of appeal as a condition of his plea, and that waiver is found to be voluntarily and intelligently executed, then the petitioner is precluded "from asserting independent claims relating to prior, nonjurisdictional events." *Id.* (citing, *inter alia*, *U.S. v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995); *Bello v. People*, 886 F. Supp. 1048, 1054 (W.D.N.Y. 1995); & *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

To determine if a plea is valid, the court must ascertain "whether the

plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *N.C. v. Alford*, 400 U.S. 25, 31 (1970) (quoted in *Conyers,* 2000 WL 33767755 at *4). According to the Supreme Court, the following standard applies when determining the voluntariness of a guilty plea:

> [a] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business[.]

*Brady v. U.S.*, 397 U.S. 742, 755 (1970) (citation omitted). Moreover, the court must assess the relevant circumstances, including the sentence a petitioner could receive if convicted at trial, prior criminal history, and the trial court's explanation of the options. *See Conyers,* 2000 WL 33767755 at *4 (citing *Brady*, 397 U.S. at 748-49) (citations omitted)). To determine whether a plea is knowledgeable, the court must examine the "defendant's competence and control of his mental faculties and his awareness of the nature of the charges against him[.]" *Id.* (citing *Bousley,* 523 U.S. at 619).

Based on the record, Russell was fully aware of the consequences of pleading guilty and there were no threats, promises, or misrepresentations

-11-

made to induce him to plea. *See Tr.* at pp. H-386-97. Russell was cognizant of the sentence he could receive if convicted at trial, his prior convictions were known, and Russell received an explanation of all his options. *See id.* Furthermore, Russell was competent, in control of his faculties, and understood the charge filed against him. *See id.* Thus, Russell entered into the plea voluntarily, intelligently, and knowingly. Additionally, Russell voluntarily and intelligently executed a waiver of appeal. *See Waiver* at p. H-403. Therefore, the Appellate Division's decision was not contrary to, or an unreasonable application of, established federal law.

Accordingly, the Petition is **denied** on this ground.

### C. Ineffective Assistance of Counsel

Russell claims that his stand-by trial counsel was ineffective because: 1) an investigator was not hired; 2) he was not properly advised on a choice between a jury or non-jury trial; and 3) counsel was inattentive and did not prepare his defense. *See Pet.* at ¶12(i). The Appellate Division held that this issue was either without merit or unpreserved.[6] *See Russell*, 730 N.Y.S.2d at

---

[6] The Court notes that when the Appellate Division holds that a claim is "either unpreserved or without merit," as it did here, the claim is nonetheless preserved for *habeas* review. *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000).

575.[7] Pursuant to the 440 motion filed, the trial court found no basis in Russell's claim. *See Order* at pp. H-924-25.

Where, as here, a plea and waiver of appeal is found to be voluntarily and intelligently entered any claims of ineffective assistance of counsel are deemed "waived except as they directly relate to [the] voluntariness" of the plea. *Conyers*, 2000 WL 33767755 at *4 (citing, *inter alia*, *Tollett*, 411 U.S. 258 (1973) & *U.S. v. Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996)). Russell does not challenge that his stand-by counsel failed to aid him in making a voluntary decision. *See Pet.* at ¶12(i). Thus, Russell is precluded from asserting any other claims that counsel was ineffective before his plea.

Therefore, the Petition is **denied** on the ground of ineffective assistance of counsel.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that the Petition for a Writ of *Habeas Corpus* (**Dkt. No. 1**) is **DENIED** and **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court provide a copy of this Order to

---

[7]The Appellate Division substantively addressed only the issues of whether Russell was denied his constitutional right to a speedy trial and if his plea was knowingly and voluntarily made. *See People v. Russell*, 730 N.Y.S.2d 574, 575 (N.Y. App. Div. 3d Dep't 2001).

the parties to this action.

**IT IS SO ORDERED.**

Date: June 20, 2007
Albany, New York

*/s/ Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge